**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A WARRANT AUTHORIZING THE SEARCH OF 10356 VENICE LANE, STARK CITY, NEWTON COUNTY, MISSOURI (THE TARGET LOCATION). | No. 24-sw-2102-DPR |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Andrew Alder, a Special Agent with the Internal Revenue Service (IRS), United States Department of Treasury, being duly sworn, do depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent with Internal Revenue Service-Criminal Investigation (IRS-CI) and have been so employed since December 7, 2020. I am currently assigned to the Saint Louis Field Office, Overland Park, Kansas, post of duty. I have a Master of Science degree in accountancy from the University of Missouri-Columbia. Prior to becoming a special agent, I worked in public accounting as a financial statement auditor for approximately four years. In addition, I obtained a Certified Public Accountant (CPA) license on December 19, 2017, which remained active until September 30, 2023. My responsibilities as a special agent include the investigation of potential criminal violations of the Internal Revenue Code (Title 26, United States Code), the Money Laundering Control Act (Title 18, United States Code), the Bank Secrecy Act (Title 31, United States Code), and related offenses.

2. While employed as a special agent, I completed 25 weeks of extensive training at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. This training consisted of the 12-week Criminal Investigator Training Program conducted by the Department of

1

Homeland Security and the 13-week Special Agent Basic Training program conducted by the IRS National Criminal Investigator Training Academy. While attending FLETC, I studied criminal investigations, searches and seizures, and violations of the Internal Revenue Code. I received extensive training on conducting financial investigations by analyzing the books and records of individuals and businesses, which can include journals, ledgers, bank accounts, invoices, receipts, tax returns, and other records pertinent to the investigation of violations of the Internal Revenue Code. Since completing my training, I have participated in the execution of various search warrants.

3. Probable cause for the issuance of this search warrant is derived from my personal knowledge, my observations, and my review of evidence obtained during the course of the investigation as well as information provided by other law enforcement officers. This affidavit contains information necessary to support probable cause for the issuance of this warrant. This affidavit is not intended to include each and every fact and matter known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish the foundation for an order authorizing the search of the listed locations.

## PURPOSE OF AFFIDAVIT

4. William "Phillip" JACKSON is under criminal investigation for the Forcible Rescue of Seized Property in violation of 26 U.S.C. § 7212(b). On January 24, 2024, JACKSON was evicted from a residential property and a commercial property, pursuant to a final judgment and an order of sale previously entered by the United States District Court for the Western District of Missouri in 2019. Immediately following the evictions, JACKSON engaged in various tactics to reoccupy the residential property and interfere with the subsequent sale of the properties.

2

## LOCATIONS FOR WHICH PERMISSION TO SEARCH IS SOUGHT

5. This affidavit is submitted in support of application for a warrant authorizing the search of a residence in the Western District of Missouri.

6. The location sought to be searched and its description are as follows:

7. **10356 Venice Lane, Stark City, Newton County, Missouri**, hereinafter referred to as the "Target Location," consists of approximately 18.8 acres of heavily wooded land and includes a red, single-family home with a green roof; a red detached garage with three garage doors; and a red shed. Each of these structures are located on the edge of the property that is furthest from Venice Lane. There is a gated driveway from Venice Lane that is approximately 3/10 of mile long, which leads to the property's structures. The property is more fully described in Attachment A to the application for search warrant.

## INVESTIGATION OVERVIEW

8. JACKSON failed to timely file federal income tax returns for tax years 1998, 1999, 2000, 2001, and 2002, despite having sufficient income requiring him to do so.

9. Between October 2003 and March 2012, the IRS filed Notices of Federal Tax Liens with the Newton County, Missouri, Recorder's Office regarding the assessment of JACKSON's income tax liabilities for tax years 1998, 1999, 2000, 2001, and 2002.

10. On August 28, 2006, a delegate of the Secretary of the Treasury made income tax, penalty, and interest assessments against JACKSON for his 1998, 1999, 2000, 2001, and 2002 tax years. The total balance assessed against JACKSON at this time was approximately $1.4 million dollars (including penalties and interest).

3

11. Due to JACKSON's failure to pay the federal tax liabilities referred described above despite notice and demand, federal tax liens arose as of the dates of the assessments and attached to all property and rights to property of JACKSON then existing or thereafter acquired.

12. In September 2011, after JACKSON's continued non-compliance, the IRS requested the case be referred to the Department of Justice, Tax Division (DOJ-Tax) to file suit to set aside fraudulent conveyance(s) and foreclose the federal tax lien on several pieces of real properties the taxpayer owns, to collect the tax. The IRS Chief Counsel referred the case to the DOJ-Tax in October 2013, and a complaint was filed by the DOJ-Tax in August 2016.

13. On February 23, 2018, the Western District of Missouri granted partial summary judgment in favor of the United States, finding JACKSON had taxable income and was liable for statutory penalties for 1998 through 2002; and that JACKSON and his wife, Sharon Jackson, were the legal and equitable owners of the four subject properties, which were encumbered by federal tax liens. The four subject properties are as follows:

   a. A real residential property located at 10356 Venice Lane, Stark City, MO (Target Location).

   b. A real commercial property (Jackson Family Tire) located at 569 West Valley Street, Granby, MO (Property 2[1]).

   c. A real commercial property (Jackson Family Tire) located at 601 West Valley Street, Granby, MO (Property 2[1]).

   d. A real commercial property located at 144 West Valley Street, Granby, MO (Property 3).

14. Beginning on July 23, 2018, a jury trial was held in the United States District Court for the Western District of Missouri. The jury returned a verdict finding JACKSON did not prove

---

[1] The properties located at 569 and 601 West Valley Street, Granby, MO are adjacent properties, both of which contain a portion of a commercial building occupied by Jackson Family Tire. Therefore, while distinctly separate parcels of land, these properties will both be referred to herein as "Property 2" to avoid confusion when subsequently describing locations.

4

that gross income for his business was not attributable to him as taxable income for tax years 2000, 2001, and 2002.

15. On January 30, 2019, the United States District Court for the Western District of Missouri issued an order and final judgment in favor of the United States and consistent with the jury verdict. The Court ordered enforcement of the federal tax liens and sale of the four properties identified in the complaint. The total balance assessed against JACKSON at this time was approximately $2.4 million (including penalties and interest).

16. On September 9, 2019, the Court granted the United States' proposed order of sale of the four properties. Included in the Court's order were the following terms and conditions:

   a. Up until the date on which the Court confirms the sale of the properties, JACKSON shall do nothing that tends to reduce the value or marketability of the properties, nor shall he cause or permit anyone else to do so.

   b. JACKSON shall not record any instrument, publish any notice, or take any other action (such as running newspaper advertisements, posting signs, or making internet or social media postings) that may directly or indirectly tend to adversely affect the value of the properties or that may tend to deter or discourage potential bidders from participating in the public auctions, nor shall he cause or permit anyone else to do so.

   c. All persons occupying the properties shall vacate each property permanently within thirty days of the date of the order of sale (i.e., October 10, 2019), each taking with them his or her personal property (but leaving all improvements, buildings, fixtures, and appurtenances).

   d. If any person fails or refuses to vacate the properties by the date specified, or attempts to re-enter the properties thereafter, an IRS Property Appraisal & Liquidation Specialist (PALS) is authorized to coordinate with the U.S. Marshals Service (USMS) to take all actions that are reasonably necessary to arrest and/or evict said persons from the premises.

   e. Any personal property remaining on the properties thirty days after the date of this order (i.e., October 10, 2019) is deemed forfeited and abandoned, and an IRS PALS is authorized to dispose of the personal property in any manner they see fit, including sale.

f. Up until the date on which the Court confirms the sale of the properties, the IRS, PALS, the USMS, and their representatives are authorized to have free and full access to the properties in order to take any and all actions necessary to preserve and market the properties, including, but not limited to retaining a locksmith or other person to change or install locks and other security devices on any part of the properties.

g. Notice of the sales shall be posted publicly once a week for at least four consecutive weeks prior to the sale of the properties.

17. On June 30, 2021, JACKSON told an IRS PALS that he would not vacate the properties.

18. On July 7, 2022, the IRS PALS drove past the properties and observed that the properties had not been vacated.

19. On January 24, 2024, the IRS PALS, USMS, Treasury Inspector General for Tax Administration (TIGTA), and Newton County Sheriff's Department coordinated to evict JACKSON and other occupants from the Target Location and Property 2.[2] JACKSON was present and residing at the Target Location during the eviction. As a part of the evictions, the properties were secured, and IRS "No Trespassing" signs were displayed at the properties. An auction for the sale of the properties was to be held the following day.

20. After the evictions were executed, investigators learned that JACKSON filed a Chapter 13 Bankruptcy petition on January 23, 2024. The bankruptcy petition was not entered until January 24, 2024, after the evictions had been initiated. This caused the IRS to postpone the auction.

21. On the evening of January 24, 2024, the Newton County Sheriff's Department received information that JACKSON had moved back onto the Target Location.

---

[2] Although JACKSON was subject to eviction as early as October 10, 2019, the IRS experienced significant delays in its normal processes due to the COVID 19 pandemic and the resulting eviction moratoriums enacted by federal, state, and local governments during this time. Additionally, while Property 3 will still be sold pursuant to the order of sale, a third-party tenant was renting this property, and as such, the IRS elected not to evict this tenant.

22. On January 25, 2024, the day following the eviction, special agents of TIGTA observed an IRS lock and chain agents placed on the front gate to the Target Location had been removed and a new lock and chain had been put in its place. The agents also observed the IRS "No Trespassing" sign displayed near the front gate to the Target Location had been removed.

23. On January 26, 2024, TIGTA special agents observed paperwork for a depositional affidavit taped to the front door of Property 2. The depositional affidavit was filed on January 23, 2024, by JACKSON's brother, Stephen Jackson, and was referred to as a "Sweat Equity" lien based on handwritten notations on the paperwork. The paperwork claims Stephen Jackson has a lien against all four properties totaling $425,725.50 arising from unspecified "trusts contracts." The paperwork was taped directly over the IRS "No Trespassing" sign as if to conceal the sign from the public. The agents removed the paperwork and tape and had it forensically examined for fingerprints. The forensic examiner found fingerprints belonging to Stephen Jackson on the adhesive side of the tape. Another individual's fingerprints were also found but did not yield a match in the Federal Bureau of Investigation's (FBI) database. Notably, JACKSON does not have a criminal history, so his fingerprints have not been added to the FBI's database. Agents removed from Property 2 copies of the same paperwork again on the 13th, 21st, and 29th of February 2024, and on March 8, 2024. In each instance, the paperwork was placed over the IRS "No Trespassing" sign.

24. A hearing was conducted in United States Bankruptcy Court from February 8 to February 9, 2024. During the bankruptcy proceeding, JACKSON testified, under oath, that he cut and removed the IRS lock and chain secured to the front gate of the Target Location, removed the IRS "No Trespassing" sign, and resided at the Target Location before and after January 24, 2024.

7

Additionally, JACKSON brought the IRS lock and chain to the bankruptcy proceeding. The court ruled the lock and chain be turned over to TIGTA as evidence.

25. On February 14, 2024, the United States Bankruptcy Court ruled JACKSON acted in bad faith when he filed for bankruptcy. The Court also retroactively lifted the automatic bankruptcy stay and ruled the IRS did not act willfully to violate the automatic stay.

26. On February 28, 2024, investigators installed surveillance cameras near the front gate of the Target Location. Since installing the cameras, vehicles agents have observed JACKSON driving in the past, including a dark gray Scion sport utility vehicle (SUV), have been repeatedly captured entering and exiting the front gate to the Target Location throughout the day. The surveillance cameras have also captured the same vehicle entering the property during evening hours, but not exiting the property until the morning hours of the following day, indicating JACKSON stayed at the Target Location overnight. Below is a log documenting the date and time of relevant activity captured since the surveillance cameras were installed at the Target Location.

| Date | Time | Arriving/Departing | Vehicle Description |
|---|---|---|---|
| 2/28/2024 | 0754 | Departing | Dark Gray Scion SUV |
| 2/29/2024 | 0650 | Departing | Dark Gray Scion SUV |
| | 1217 | Departing | Dark Gray Scion SUV |
| | 1718 | Arriving | Blue Dodge Ram Pickup Truck |
| | 1756 | Departing | Blue Dodge Ram Pickup Truck |
| | 1805 | Departing | Dark Gray Scion SUV |
| | 1825 | Arriving | Dark Gray Scion SUV |
| | 1853 | Departing | Dark Gray Scion SUV |
| | 1910 | Arriving | Dark Gray Scion SUV |
| 3/1/2024 | 1239 | Departing | Dark Gray Scion SUV |
| 3/2/2024 | 0721 | Departing | Dark Gray Scion SUV |
| | 0745 | Arriving | Dark Gray Scion SUV |
| | 2004 | Arriving | Dark Gray Scion SUV |
| 3/3/2024 | 0725 | Departing | Dark Gray Scion SUV |

|  | 0744 | Arriving | Dark Gray Scion SUV |
|---|---|---|---|
|  | 1007 | Departing | Dark Gray Scion SUV |
|  | 1331 | Arriving | Dark Gray Scion SUV |
|  | 1905 | Arriving | Dark Gray Scion SUV |
| 3/4/2024 | 0553 | Departing | Dark Gray Scion SUV |
|  | 0619 | Arriving | Dark Gray Scion SUV |
|  | 0634 | Departing | Dark Gray Scion SUV |
|  | 1200 | Arriving | Dark Gray Scion SUV |
|  | 1338 | Departing | Dark Gray Scion SUV |
|  | 1735 | Arriving | Dark Gray Scion SUV |
| 3/5/2024 | 0755 | Departing | Dark Gray Scion SUV |
|  | 1150 | Arriving | Dark Gray Scion SUV |
|  | 1411 | Departing | Dark Gray Scion SUV |
|  | 1619 | Arriving | Dark Gray Scion SUV |
|  | 1814 | Departing | Dark Gray Scion SUV |
|  | 1919 | Arriving | Dark Gray Scion SUV |
| 3/6/2024 | 0557 | Departing | Dark Gray Scion SUV |
|  | 0615 | Arriving | Dark Gray Scion SUV |
|  | 0741 | Departing | Dark Gray Scion SUV |
|  | 0959 | Arriving | Black and Orange Ford F-250 |
|  | 1023 | Arriving | Blue GMC Yukon |
|  | 1125 | Departing | Black and Orange Ford F-250 |
|  | 1125 | Departing | Blue GMC Yukon |
|  | 1255 | Arriving | Dark Gray Scion SUV |
|  | 1507 | Departing | Dark Gray Scion SUV |
|  | 1739 | Arriving | Dark Gray Scion SUV |
| 3/7/2024 | 1230 | Arriving | Dark Gray Scion SUV |
|  | 1339 | Departing | Dark Gray Scion SUV |
|  | 1757 | Arriving | Dark Gray Scion SUV |
| 3/8/2024 | 0523 | Departing | Dark Gray Scion SUV |
|  | 1225 | Arriving/Departing | Dark Gray Scion SUV |
| 3/10/2024 | 2014 | Arriving | Dark Gray Scion SUV |
|  | 2108 | Departing | Dark Gray Scion SUV |
| 3/12/2024 | 0448 | Arriving | Dark Gray Scion SUV |
|  | 0551 | Departing | Dark Gray Scion SUV |

27. On February 29, 2024, investigators installed a surveillance camera near Property 2. That same day, the surveillance camera captured two individuals, believed to be JACKSON and Stephen Jackson, arrive at Property 2 in a dark gray Scion SUV and place what appeared to be

9

paperwork to the front door of the building on Property 2. The two individuals were also captured walking around to the area immediately behind the building on Property 2. The paperwork was subsequently discovered to be the same Depositional Affidavit and "Sweat Equity" lien paperwork described above and was ultimately removed by special agents that same day.

28. On or about February 29, 2024, surveillance camera footage indicates paperwork was also placed near the front gate to the Target Location. The paperwork was the same Depositional Affidavit and "Sweat Equity" lien paperwork and was ultimately removed by agents on March 8, 2024.

29. On March 6, 2024, surveillance cameras captured a black and orange Ford F-250 pickup truck enter the front gate of the Target Location while pulling an empty trailer. The pickup truck is registered to Sharon Jackson and is known by investigators to be used by JACKSON. The same pickup truck is then captured exiting the front gate of the Target Location a short time thereafter, this time hauling a red Scion SUV in the trailer.

30. On March 8, 2024, IRS PALS, IRS-CI, TIGTA, and Newton County Sheriff's Department coordinated to resecure an IRS lock and chain to the front gate of the Target Location and to place additional IRS "No Trespassing" and "For Sale" signs up at the Target Location, Property 2, and Property 3. While placing additional signage up at Property 2, agents observed a red Ford Ranger pickup truck driving out from behind Property 2 with a piece of machinery in its truck bed. Inside the pickup truck were two known Jackson Family Tire employees. The employees stated they were moving a large commercial air compressor from Property 2. After the pickup truck departed, agents observed the only rear entrance to the building, noting there was a hole in the door handle. Additionally, agents observed the door to an external storage room (attached to the building on Property 2) was open. Inside the storage room were other pieces of

10

machinery similar to the air compressor driven off the property by the two employees. An agent with TIGTA subsequently identified the same pickup truck and air compressor inside a building on another former JACKSON property (Property 3).

31. On the evening of March 9, 2024, neighbors observed JACKSON driving onto their property (which is adjacent to the Target Location) and then travel through a gap in the fence line in order to access the Target Location. The neighbors subsequently mended the gap in the fence, installed "No Trespassing" signs of their own, and set up a trail camera of their own to monitor the area.

32. On the evening of March 10, 2024, a surveillance camera captured a vehicle, believed to be a Scion SUV, approach the front gate of the Target Location. Shortly thereafter, an individual, believed to be JACKSON, exits the Scion SUV and is seen cutting or unraveling a section of barbed wire immediately to the right of the property's front gate. After returning to the Scion SUV, the individual then drives through the newly created gap in the barbed wire and onto the Target Location.

33. On March 13, 2024, a Granby Police Officer responded to an incident reported at Property 2. Upon the officer's arrival, two Jackson Family Tire employees were present, and Sharon Jackson arrived on site moments later. The two Jackson Family Tire employees stated they were moving tires located outside at Property 2 to the neighboring property immediately to the east when they noticed a hole in the door handle to the building's rear entrance. Additionally, the two employees stated the external storage room door was open and they believed "someone" was trying to steal an air compressor located inside the external storage room. The officer instructed all the individuals to leave the premise while he sought advice from a local judge. Upon returning to Property 2, the officer observed Sharon Jackson and the two Jackson Family Tire employees

11

were again present at the property, accompanied this time with two other individuals. The officer further observed a small black or red pickup truck, possibly a Ford Ranger, with a trailer backed up to the external storage room door where the air compressor was located. During the incidents, Sharon Jackson claimed she was given "special permission" from the IRS PALS to remove the tires from the property. Sharon Jackson also claimed they were going to remove the air compressor to "hold it for the IRS so that it doesn't get stolen." The IRS PALS had, in fact, not permitted Sharon Jackson, her family, or their employees to be on the property or to remove any items from the property.

## AUTHORIZATION REQUEST

34. Based on the foregoing evidence obtained during the course of the investigation, I respectfully submit there is probable cause to believe further evidence to the crime of Forcible Rescue of Seized Property in violation of 26 U.S.C. § 7212(b) may be presently found within the Target Location.

35. Although, pursuant to the terms and conditions outlined in the order of sale, the IRS and its representatives are authorized free and full access to the Target Location, as a precautionary measure, I respectfully submit this affidavit in support of an application for a search warrant out of an abundance of caution, based on the reasonable belief that JACKSON may currently reside at the Target Location.

36. I, Andrew Alder, a special agent with the IRS, upon the foregoing facts, my training and experience, and from information which I have obtained from other law enforcement officers, I respectfully submit that there is probable cause to believe that the items described in Attachments B, which are evidence, contraband, fruits of crime, and instrumentalities of criminal offenses

against the United States in violation of 26 U.S.C. § 7212(b), will be located inside the Target Location, and more fully described in "Property to be Searched" under Attachment A.

Further your affiant sayeth naught.

*[signature]*
Special Agent Andrew Alder
Internal Revenue Service
Criminal Investigation

Subscribed and sworn to before me in my presence via telephone on the ___12th___ day of April 2024, in the Western District of Missouri.

*[signature]*
DAVID P. RUSH
United States Magistrate Judge
Western District of Missouri

13